

towardsjustice.org | 720-441-2236
303 E. 17th Street, Suite 400 Denver, CO 80203
PO Box 371680, PMB 44465 Denver, CO 80237-5680

January 20, 2023

**By CM/ECF**
Judge Nina R. Morrison
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: Cover Letter for Motion for Preliminary Injunction and Request for Expedited Briefing in *Vidal v. Advanced Care Staffing, LLC*, 22-cv-05535-NRM-MMH (E.D.N.Y.)

Dear Judge Morrison:

  Pursuant to Rule 5.2.3.1 of this Court's Individual Practice Rules, Plaintiff Benzor Vidal submits this cover letter to inform the Court of Plaintiff's Motion for Preliminary Injunction under Fed. R. Civ. Proc. 65, which seeks a stay of Defendant Advanced Care Staffing's arbitration proceeding against Mr. Vidal until this Court can determine whether the arbitration provision in this case contains a clear and unmistakable delegation clause and whether any putative delegation clause is valid and enforceable. Those issues are reserved for resolution by this Court. Mr. Vidal served the motion and supporting documents on Defendant Advanced Care Staffing today. Consistent with Rule 5.2.3.1, Mr. Vidal is not filing his motion on ECF at this time. However, Mr. Vidal respectfully requests that the Court order expedited briefing, as his motion raises urgent issues, which are summarized below.

  **Background:**

  This case involves Defendant Advanced Care Staffing's threats of ruinous financial harm against its former employee Mr. Vidal, an immigrant nurse whom the company recruited from the Philippines in 2019. ACS used these threats in an attempt to coerce Mr. Vidal to continue working at a nursing home in Crown Heights, Brooklyn, where he was paid below-market wages and confronted grueling and dangerous working conditions. After Mr. Vidal left his job because he feared for his safety and that of his patients, Advanced Care Staffing weaponized the arbitration requirement and "loser pays" provision in Mr. Vidal's employment contract to punish him. The arbitration that Advanced Care Staffing filed with the American Arbitration Association ("AAA") last year threatens to bury Mr. Vidal in tens of thousands of dollars of debt in attorney's fees, filing fees, and arbitrator compensation.

  **AAA's Refusal to Pause the Arbitration in Response to Mr. Vidal's Requests and the Intervention of the New York Attorney General:**

  For the reasons set out in his Complaint, ECF Doc. 1, and explained in his motion, which he is prepared to file with the Court, the arbitration requirement in Mr. Vidal's contract is illegal and unenforceable. Since the filing of his case, Mr. Vidal has on several occasions urged the AAA to

pause his arbitration so that this Court may consider those challenges to the arbitration requirement. Additionally, Mr. Vidal has repeatedly pointed out to the arbitrator that she has no authority to rule on the validity of the arbitration requirement. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (the arbitrator has "no authority of any kind with respect to a matter at issue absent an agreement to arbitrate," and "the question of whether such an agreement exists and is effective is necessarily for the court and not the arbitrator").

The Office of the New York State Attorney General has also taken action. Earlier this month, the Attorney General sent a letter to AAA expressing "grave concerns" about the use of arbitration proceedings to enforce oppressive contract provisions that "compel forced labor" in violation of the Trafficking Victims Protection Act ("TVPA"). *See* Ex. A (letter from Office of the New York State Attorney General) at 1. The Attorney General urged AAA to "exercise caution" before administering arbitrations "concer[ning] unlawful contract provisions that violate the TVPA," like the contract at issue here, lest the AAA's arbitration program be "used as a tool by employers to further labor trafficking violations." *Id.* at 3. The Attorney General also asked the AAA to stay the Vidal arbitration in particular "because it is an undue burden on the worker to defend this matter, especially while the legality of the contract provision at issues is pending" before the Court. *Id.*

Nonetheless, to date, the AAA and the arbitrator have declined to even pause the arbitration proceedings pending litigation of this case. Instead, the Arbitrator has set an aggressive schedule, including a deadline for service of discovery requests in December 2022, responses to which are due January 20, and completion of all discovery by mid-March. Meanwhile, the arbitrator's work on this case—mounting at a cost of $450 per hour—and ACS's spiraling attorney's fees related to the arbitration, continue to impose even greater costs on Mr. Vidal.

**Mr. Vidal's Motion for Preliminary Injunction:**

Mr. Vidal seeks a preliminary injunction against the continued administration of the arbitration at least until this Court has an opportunity to address whether the arbitration provision clearly and unmistakably delegates issues of arbitrability to the arbitrator and whether such a putative delegation clause is valid and enforceable. The Arbitrator has no authority to rule on the validity of the arbitration requirement absent a valid delegation provision that clearly and unmistakably delegates issues of arbitrability to the arbitrator, and Mr. Vidal's challenges to the delegation provision are for the Court to decide. *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019) ("That specific attack on the delegation provision is sufficient to make the issue of arbitrability one for a federal court.").

The Court has authority to enjoin arbitration proceedings where "the parties have not entered into a valid and binding arbitration agreement." *In re Am. Exp. Fin. Advisors Secs. Litig.*, 672 F.3d 113, 140 (2d Cir. 2011). And where there are "serious questions" about whether a dispute is subject to a valid arbitration agreement, the Court may issue a preliminary injunction to "freeze [the] arbitration without destroying" the non-moving party's "ability to continue that arbitration in the event that the district court" later determines that the dispute is arbitrable. *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34 (2d Cir. 2010).

All the equities weigh in favor of prompt, preliminary relief. "Compelling arbitration of a matter not properly subject to arbitration constitutes per se irreparable harm." *Citigroup Global Mkts. Inc. v. VCG Special Opportunities Master Fund Ltd.,* No. 08 Civ. 5520, 2008 WL 4891229, at *2

(S.D.N.Y. Nov. 12, 2008) (internal quotation marks omitted). That is especially true here, where the party seeking preliminary relief is an immigrant worker threatened with severe financial harm. The "time and resources [Mr. Vidal] would expend" defending himself "in arbitration is not compensable by any monetary award of attorneys' fees or damages . . .." *Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997).

Furthermore, the incentives created by allowing ACS's conduct to proceed unchecked militate in favor of a preliminary injunction to protect the public interest in guarding against forced labor and human trafficking. Allowing ACS to weaponize the arbitration process and aggressively seek judgment against Mr. Vidal while his allegations go unexamined would undermine that interest. *See* Ex. A (letter from Office of the New York State Attorney General) at 2.

\* \* \*

To avoid burdening the judicial resources of this Court and the resources of the parties with unnecessary litigation, Mr. Vidal has attempted for months to persuade the AAA and the Arbitrator to pause Advanced Care Staffing's arbitration against Mr. Vidal pending judicial resolution of this case. The New York State Attorney General has also weighed in. None of that has worked. He respectfully requests that this Court provide preliminary and interim relief to protect his rights until at least such time as this Court has addressed whether the arbitration provision contains a clear and unmistakable delegation clause and whether any putative delegation clause is valid and enforceable. Because the matter is urgent, Mr. Vidal also requests that the Court order expedited briefing. He is prepared to file his motion for preliminary injunction at any time.

Respectfully submitted,

*/s/ David H. Seligman*
David H. Seligman

cc: All counsel of record by ECF

# EXHIBIT A



**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
LABOR BUREAU

January 4, 2023

**Via Electronic Mail** (LesserA@adr.org)
Ann Lesser
Vice President – Labor, Employment, and Elections
American Arbitration Association
120 Broadway, Floor 21
New York, NY 10271

Re:   *Unlawful Liquidated Damages Provisions in Employment Contracts and Advanced Care Staffing, LLC v. Benzor Vidal* (Case No. 01-22-0002-9008)

Dear Ms. Lesser:

We write to express our grave concerns about companies using arbitration proceedings to attempt to enforce illegal liquidated damages provisions against foreign nurses. Hospitals and staffing agencies have long engaged in a practice of recruiting nurses from other nations to work in New York, requiring them to sign employment contracts that oblige them to pay unlawful fees (up to $25,000) should they resign or be fired within their first three years of employment. These fees are an unenforceable penalty and the provisions threatening enforcement of such fees compel forced labor, in violation of the Trafficking Victims Protection Act ("TVPA").[1] Through recent public lawsuits, we understand that employers are pursuing damages against workers under these unlawful liquidated damages provisions through mandatory arbitration proceedings before the American Arbitration Association ("AAA").

The New York State Office of the Attorney General (the "OAG") is deeply committed to enforcing federal, state, and local laws to protect vulnerable workers' rights and ensure a workplace free of exploitation. The OAG has and will continue to investigate these types of claims. *See In re: Albany Med Health System f/k/a Albany Medical Center*, AOD No. 21-040 (June 11, 2021); AOD No. 22-058 (September 13, 2022) (settling OAG investigations of employer for unlawfully including and enforcing a $20,000 repayment fee in employment contracts from nurses recruited from foreign nations).[2]

---

[1] *See Paguirigan v. Prompt Nursing Emp't Agency LLC*, No. 17-cv-1302 (NG) (JO), 2019 U.S. Dist. LEXIS 165587, at *23, 54 (E.D.N.Y. Sep. 23, 2019).

[2] See press releases here: https://ag.ny.gov/press-release/2021/attorney-general-james-recovers-over-90000-restitution-albany-nurses-subjected (AOD No. 21-040 *embedded*); https://ag.ny.gov/press-release/2022/attorney-general-james-returns-24000-nurses-taken-advantage-albany-hospital (AOD No. 22-058 *embedded*).

January 4, 2023
Page 2

We have analyzed the contract provisions at issue in the matter of *Vidal v. Advanced Care Staffing, LLC*, 22-cv-5535 (E.D.N.Y. Sept. 16, 2022) (related to pending AAA Case No. 01-22-0002-9008, *Advanced Care Staffing, LLC v. Benzor Vidal*) where Advanced Care Staffing ("ACS") demanded a substantial penalty fee from Vidal, a nurse recruited from a foreign nation, because he failed to complete his three-year employment term. After an initial analysis of ACS contract provisions,[3] they appear invalid and unlawful under the TVPA.

The ACS employment contracts and circumstances under which nurses have signed them, are strikingly similar to the federal matter analyzed against Prompt Nursing Emp't Agency LLC d/b/a Sentosa Services a/k/a/ Sentosacare ("Sentosa"). *Paguirigan*, No. 17-cv-1302 (NG) (JO), 2019 U.S. Dist. LEXIS 165587. In *Sentosa*, nurses recruited from the Philippines were given contracts with a provision requiring them to pay up to $25,000 in liquidated damages if they failed to complete the full three-year employment term. *Id.* at *9.[4] The $25,000 penalty demanded in liquidated damages was disproportionate to the actual costs *Sentosa* incurred in recruiting the nurses,[5] which were ascertainable at the time of hire. *Id.* at *34. This provision constituted a threat of serious financial harm "to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* at *53 (quoting TVPA § 1589(c)(2)). In reaching this conclusion the court noted consideration of the "particular vulnerabilities of plaintiff and other class members—all of them recent immigrants to the United States—and have also focused on whether it would be objectively reasonable for them to continue working under the circumstances." *Id.* at *54.

Similar to *Sentosa*, ACS's early termination provisions threaten both legal and financial harm in violation of the TVPA § 1589. The indefinite sums demanded by ACS are disproportionate to the ascertainable costs ACS may have incurred in recruiting Vidal, making it an unenforceable penalty.[6]

---

[3] The first contract Vidal signed in 2019 sought to compel performance of a three-year work term by including a $20,000 promissory note, demanding this amount plus all costs incurred by ACS to enforce this note if Vidal was terminated or resigned within the first three years of work. The second contract Vidal signed in 2022 removed the promissory note requirement, to avoid any interpretation it could be used as an early "buy out," but still demanded reimbursement of all costs and expenses to compel work performance for three years and prevent an early termination. The costs and expenses, as vaguely stated in the second contract, are indefinite, and the financial harm threatened by ACS has the potential to exceed $20,000. In response to Vidal informing ACS of his desire to resign prior to his three-year work term, ACS communicated to him that they would seek significant damages in arbitration, explaining that their purported damages were at least $20,000, the cost of trying to find a new nurse would be $9,000 for each year remaining in his contract, and that Vidal would also be responsible for all attorney's fees and costs incurred in arbitration.

[4] The court noted that although the contract was negotiated at arms length, the parties were of "unequal bargaining power" and the contract was "not achieved through arms length negotiation"; the plaintiff was not represented by counsel when she executed the contract and there was no evidence she had familiarity with American contract law. *Id.* at *25. (internal citations omitted).

[5] When reviewing actual costs, the court looked at lawyer's fees, filing fees, visa fees, ICHP visa screening fees, airfare, and other miscellaneous expenses such as housing. *Id.* at *26.

[6] See *Paguirigan*, at *26 (the liquidated damages provision was an unenforceable penalty where it did not bear "a reasonable proportion to the probable loss").

January 4, 2023
Page 3

Accordingly, we request that AAA exercise caution in reviewing the pending arbitration matter, *ACS v. Vidal* (AAA Case No. 01-22-0002-9008). AAA should consider staying the arbitration because it is an undue burden on the worker to defend this matter, especially while the legality of the contract provision at issue is pending review before the U.S. District Court. We also request that AAA perform a review of open matters enforcing similar liquidated damages provisions and consider staying those cases as well.

The OAG also urges the AAA to exercise its authority to decline to administer future proceedings brought under like circumstances, concerning unlawful contract provisions that violate the TVPA and seek unenforceable penalties. *See AAA Employment Arbitration Rules and Procedures*, pp. 7-8 ("If the [AAA] determines that a dispute resolution program on its face substantially and materially deviates from the minimum due process standards of the Employment Arbitration Rules and Mediation Procedures and the Due Process Protocol, the [AAA] may decline to administer cases under that program").[7]

We request that the AAA consider the serious implications of proceeding with these arbitrations and not allow its arbitration program to be used as a tool by employers to further labor trafficking violations.

Sincerely,

*/s/ Roya Aghanori*
Roya Aghanori
Assistant Attorney General
Labor Bureau
(212) 416-6132
Roya.Aghanori@ag.ny.gov

Karen Cacace
Labor Bureau Chief

Fiona J. Kaye
Civil Enforcement Section Chief

Sandra Pullman
Senior Counsel, Civil Rights Bureau

Cc:   Michele Gomez (GomezM@aaamediation.org)
      Manager of ADR Services, AAA

      Sara Kula (Sara@sarakula.com)
      Arbitrator, AAA

---

[7] https://www.adr.org/sites/default/files/Employment-Rules-Web.pdf