# EXHIBIT 6

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| ADVANCED CARE STAFFING, LLC,<br><br>　　　　　　　Claimant,<br><br>　　　v.<br><br>BENZOR VIDAL,<br><br>　　　　　　　Respondent. | **DEMAND FOR ARBITRATION** |

　　　Claimant, Advanced Care Staffing, LLC ("Claimant"), by and through its attorneys, FordHarrison, LLP, by way of its Demand for Arbitration against Respondent, Benzor Vidal ("Respondent"), alleges and says:

## **PARTIES**

　　　1.　　Claimant is a limited liability corporation organized under the laws of the State of New York and has a principal place of business at 1000 Gates Avenue, Suite 5B, Brooklyn, New York 11221.

　　　2.　　Claimant is a healthcare staffing agency that employs nurses, who Claimant then assigns to several client long-term care facilities, such as nursing homes and skilled nursing facilities.

　　　3.　　Respondent is a Registered Professional Nurse, who, pursuant to a contract executed by Respondent on January 4, 2022 (the "Agreement"), promised to provide nursing services to Claimant for a period of three (3) years.

　　　4.　　During all times that Respondent was employed by Claimant, Respondent worked at a facility in New York City, New York.

1

5. Upon information and belief, during all times that Respondent was employed by Claimant, Respondent lived in New York City, New York.

### ARBITRATION AGREEMENT AND VENUE

6. Schedule B of the Agreement, titled "Dispute Resolution Provision", provides that "any dispute, controversy or claim arising between [Claimant] and [Respondent] (including a dispute, controversy or claim arising out of, in connection with or relating to, this Agreement, or the interpretation, performance or breach, termination or validity hereof) shall be resolved by arbitration pursuant to this dispute resolution provision (the "Provision")."

7. Pursuant to Schedule B of the Agreement, Claimant and Respondent (collectively, the "Parties") agreed that the agreement to arbitrate will be governed by the Federal Arbitration Act and shall remain in force even after Respondent separates from employment for any reason.

8. Schedule B of the Agreement also provides that the arbitration will be administered by the American Arbitration Association.

9. Pursuant to Schedule B of the Agreement, Respondent "voluntarily and knowingly" gave up the rights to a trial by a judge or a jury and agreed that "all disputes or claims relating to [his] employment (or termination of employment) will instead be decided by an arbitrator."

10. Schedule B of the Agreement also provides that the arbitration proceeding would be "conducted by a single arbitrator" in New York, New York.

11. Pursuant to Section 13 of the Agreement, the Parties agreed that the Agreement "shall be governed by, and construed in accordance with, the laws of the State of New York."

### FACTUAL BACKGROUND

12. Pursuant to a contract dated May 8, 2019, Respondent agreed to provide nursing services for Claimant's clients for a period of three (3) years (the "Prior Agreement").

13. Pursuant to the terms of the Agreement, executed by Respondent and Claimant on January 4, 2022 and January 5, 2022, respectively, the Parties agreed to "fully replace the Prior Agreement with [the] Agreement."

14. Pursuant to the Agreement, as consideration for Respondent's services, Claimant promised, *inter alia*, to sponsor Respondent for an employment-based Immigrant Visa, which allows a non-resident to obtain Permanent Residency ("green card") status in the United States, including the payment of all costs and legal fees associated with sponsoring Respondent's visa.

15. Claimant further promised to pay for Respondent's air travel to the location of employment and to subsidize his accommodations for two months.

16. In exchange for the valuable consideration set forth in the Agreement, which also included remuneration for his services as a Registered Professional Nurse, Respondent agreed to work for Claimant as a Registered Professional Nurse for a period of three (3) years (the "Work Term").

17. Claimant also agreed to advance certain costs for which Respondent was responsible, including, but not limited to, professional licensing fees, education costs, and credentialing fees (the "Advanced Costs").

18. Pursuant to Section 4(c) of the Agreement, Respondent acknowledged that Claimant "incurr[ed] Advanced Costs upon the express condition that Employee will complete the Term in full."

19. The Agreement further requires that Respondent perform all services and duties customary for a Registered Professional Nurse at the assigned work location.

20. Pursuant to Section 10(a)(1) of the Agreement, Respondent acknowledged that if he "terminates this Agreement without Good Reason (as defined [in the Agreement]) …

3

[Claimant] shall be entitled to all damages and other relief to address the harm caused by the failure of [Respondent] to fulfill [Respondent's] obligations under this Agreement."

21. Respondent also acknowledged that in the event of his resignation without Good Reason, Claimant would "suffer significant harm arising from the significant investment related to the recruitment, training, credentialing, and placement in the United States (including fees paid to third-parties)" as well as "significant loss of profits (reflecting not only loss of anticipated profits under this Agreement but also resulting from the impact on Employer's relationship with its Clients) in the event [Respondent] fails to fulfil [his] obligations under this Agreement."

22. Respondent began working for Claimant on or about March 8, 2022.

23. Respondent's three-year Work Term will expire on or about March 7, 2025.

24. Claimant assigned Respondent to work as a Registered Professional Nurse at one of its clients in the New York City area.

25. The Agreement required Claimant to pay Respondent in accordance with the prevailing wage specified in Respondent's visa petition.

26. Claimant complied with the Agreement and even paid Respondent a wage rate higher than the required prevailing wage.

27. By email dated June 15, 2022, Respondent tendered his resignation via email, to be effective on June 29, 2022.

28. At the time that he resigned, Respondent had completed only three (3) months of services.

29. Prior to submitting his resignation, Respondent never expressed any complaints or dissatisfaction to Claimant concerning his assigned work location or any other term or condition of his employment.

30. Prior to submitting his resignation, Respondent had never requested a change in his work schedule, assigned location, or any other term or condition of his employment.

31. By email on June 15, 2022, Claimant requested Respondent to reconsider his resignation, but Respondent refused.

32. Respondent last performed work for Claimant on or about June 29, 2022.

33. Currently, the demand for Registered Professional Nurses from Claimant's clients far exceeds the available staffing supply.

34. Any Registered Professional Nurses that Claimant hires to replace Respondent will fill an already existing need due to the high demand of Claimant's clients.

35. Claimant performed all of its obligations under the Agreement.

36. Pursuant to Section 14 of the Agreement, Respondent agreed to reimburse Claimant all reasonable costs, including attorneys' fees that Claimant incurs in enforcing its rights and remedies under the Agreement.

## FIRST COUNT – BREACH OF CONTRACT

37. Claimant repeats and realleges the paragraphs 1 through 36 of the Complaint and incorporates them by reference as though fully set forth herein.

38. Claimant and Respondent are parties to the Agreement.

39. Respondent terminated his employment with Claimant without Good Reason prior to completing the Work Term.

40. Respondent breached the terms of the Agreement by failing to work for Claimant for the full Work Term.

41. As a result of Respondent's breach, Claimant has lost the expected return on its significant investment in Respondent.

42. Due to the strong demand for Registered Professional Nurses in the locations served by Claimant, Claimant is consistently able to place all Registered Professional Nurses it employs.

43. Although Claimant is working to hire another Registered Professional Nurse to staff Respondent's original assignment, had Respondent not breached the Agreement, Claimant would have placed the new Registered Professional Nurse in a different assignment, thereby earning profits from both employees' services.

44. As a result of Respondent's breach, Claimant suffered damages, including, but not limited to, Advanced Costs and lost profits.

**WHEREFORE** Claimant Advanced Care Staffing, LLC requests the following relief:

(a) all available damages, including, without limitation, Claimant's Advanced Costs and lost profits;
(b) reasonable attorneys' fees;
(c) cost of arbitration;
(d) interest in accordance with New York law; and
(e) such other relief as Arbitrator deems just and proper.

Dated: July 8, 2022

**FordHarrison, LLP**

By: _____
Sami Asaad
Marissa Vitolo
FordHarrison LLP
CityPlace II
185 Asylum Street, Suite 820
Hartford, CT 06103
Tel #:  860-740-1357
Fax #:  860-578-2075
Email:  sasaad@fordharrison.com
        mvitolo@fordharrison.com

6