# EXHIBIT 17



towardsjustice.org | 720-441-2236
303 E. 17th Street, Suite 400 Denver, CO 80203

PO Box 371680, PMB 44465 Denver, CO 80237-5680

December 2, 2022

**By Email**

Sara Kula
Arbitrator
118 N. Bedford Rd., Suite 100
Mt. Kisco, NY 10549

Re: *Advanced Care Staffing, LLC v. Benzor Vidal* (Case No. 01-22-0002-9008)

Dear Arbitrator Kula:

In your November 22, 2022, email to the parties, you asked for the parties' positions on whether AAA's Commercial Arbitration Rules or AAA's Employment Arbitration Rules apply in deciding Mr. Vidal's October 6, 2022, request for a stay of this arbitration proceeding pending judicial resolution of Mr. Vidal's declaratory judgement action.

For the reasons discussed below, the Employment Rules apply to this dispute.[1] Those rules require that this arbitration be paused at least until the federal court resolves Mr. Vidal's declaratory judgment action. Doing otherwise, would be inconsistent with the due process principles purportedly embodied by those rules. The arbitration must also be paused because the arbitrator does not have any jurisdiction to decide Mr. Vidal's challenges to the contractual delegation that Advanced Care Staffing argues gives the arbitrator authority to decide threshold issues of arbitrability. And, finally, even if the arbitrator does reach those threshold issues of arbitrability—which she should not—the arbitration requirement is unenforceable as a matter of state and federal law.

### A. The AAA Employment Arbitration Rules Apply Because the Arbitration Requirement Is Part of an "Employer-Promulgated Plan"

The AAA Employment Arbitration Rules require that this case be stayed pending resolution of Mr. Vidal's federal court declaratory judgment action. While the arbitration requirement purports to require the application of AAA's Commercial Rules, the application of those rules is inconsistent with AAA's rules and policies. The Commercial Arbitration Rules require disputes "arising out of an

---

[1] While Advanced Care Staffing claims that "the parties have already been proceeding under the Employment Rules," (Claimant Ltr., Dec. 2, at p. 1), because AAA acknowlelded the Employment Fee Schedule in its case opening letter, Advanced Care Staffing continues to claim Mr. Vidal could be responsible for the cost of arbitration, including arbitrator compensation, in direct conflict with the Employment Fee Schedule.

1

employer-promulgated plan" to be administered pursuant to AAA's Employment Arbitration Rules and Mediation Procedures. Commercial Arbitration Rules and Mediation Procedures 10. According to the AAA, an employer plan is where "the employer has drafted a standard arbitration clause for use with all its employees." *Employment Arbitration under AAA Administration*, https://www.adr.org/employment.

The arbitration requirement here is an employer-promulgated plan. Notably, in its November 20, 2022 letter, Advanced Care Staffing characterizes its arbitration provision as one "drafted by the employer and made a condition of employment," and concedes Mr. Vidal did not negotiate any terms in the agreement prior to signing it. Claimant Ltr., Nov. 20, at p. 2. The arbitration requirement is an employer-promulgated plan, not an individually negotiated agreement because it is a standard arbitration clause in a pre-printed form that Advanced Care Staffing uses in employment agreements with its employees, not one in which employee are free to individually negotiate.

Courts have consistently held that standard form arbitration agreements are employer-promulgated plans under AAA's Commercial Arbitration Rules, and thereby trigger the application of AAA's Employment Arbitration Rules. For example, in *EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 464-65 (E.D.N.Y. 2006), the court found with "reasonable certainty that the [arbitration agreement] was not individually negotiated" because, in addition to the worker not being the type of "high level employee who would negotiate the terms and conditions of employment," the agreement was undisputedly drafted entirely by the employer and, as here, was presented to the employee as a condition of employment. In contrast, the court pointed to *Williams v. Tully,* No. 02-05687, 2005 WL 645943, at *2-3 (N.D. Cal. Mar. 18, 2005), where AAA determined an agreement was individually negotiated where the contract was "between an employer and an executive or other high ranking employee where the terms of the contract appear to have been open for discussion" and the individual "had the opportunity to negotiate or reject the terms of the contract." *Id.* at *3. In addition, the court in *Williams* noted that the employment agreement was drafted by the employee's attorneys after several rounds of negotiations. *Id.*

Similarly, in *VICI Metronics, Inc. v. Real Sensors, Inc.*, No. 04-0854, 2006 WL 8460173, at *3 (N.D. Cal. Sept. 29, 2006), the court concluded that the "Arbitrator's decision to apply the Employment Rules was in accordance with the Commercial Rules and therefore in accordance with the Arbitration Clause providing for arbitration according to the Commercial Rules." *Id.* Indeed, the court even remarked that, "[i]t is, honestly, difficult to understand how [the employer] can complain otherwise." *Id. See also Cantrell v. Fidelitone, Inc.*, No. 15 C 10696, 2016 WL 1161325, at *6 (N.D. Ill. Mar. 24, 2016) (employment arbitration clause that resulted from "standard agreement, rather than a negotiated agreement—is an employer plan" for purposes of determining what AAA rules to apply).

Here, Advanced Care Staffing cannot credibly argue its standard, self-described "plain-vanilla" (Claimant Ltr., Nov. 20, at p. 21) arbitration agreement was individually negotiated by Mr. Vidal. If anything, its November 20, 2022, letter highlights the vast bargaining imbalance between the parties. Mr. Vidal was in a foreign country, had already quit his job to start work for Advanced Care Staffing, and had no way of supporting himself unless he signed the contract and began working for Advanced Care Staffing.  Mr Vidal would also have been responsible for paying tens of thousands of dollars pursuant to his prior contract if he declined to sign the new agreement, a factor Advanced Care Staffing does not dispute. At most, Mr. Vidal was given the opportunity to ask

questions about the terms. But asking questions about terms is a far cry from having the ability to negotiate and change those terms.

### B. The Employment Rules Require the Arbitration Be Paused Pending Judicial Action

The Employment Arbitration Rules were developed to provide necessary safeguards specifically designed to ensure fairness and equity in resolving workplace disputes considering the reality that "economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Dunham v. Env't Chem. Corp.*, No. 06-03389, 2006 WL 2374703, at *10 (N.D. Cal. Aug. 16, 2006).

The need for additional procedural safeguards is particularly vital in these unusual circumstances, where the employer has weaponized arbitration with the specific purpose of coercing a worker's labor through an effort to collect a debt. As explained elsewhere, AAA's moratorium against administering debt collection disputes was developed to address the specific due process concerns that arise in the consumer debt collection context—those concerns are even more acute here. Both Rule 1 and Rule 2 also counsel in favor of declining to administer the dispute or pausing the arbitration until resolution of Mr. Vidal's declaratory judgment action.

Rule 1 specifically addresses these circumstances and requires a stay when an employee seeks judicial intervention in an arbitration. Employment Rule 1. Consistent with that rule, the arbitrator should at the very least pause this arbitration.

Rule 2 also requires that this arbitration be paused or terminated entirely. Rule 2 is purportedly present to so that AAA can protect the due process rights of employees by ensuring that employer-promulgated employment plans comply with AAA's due process safeguards. One such safeguard is contained in the Employment Fee Schedule, which requires the employer to pay the arbitrator's compensation unless the individual, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. But the arbitration provision and its "loser pays" provision here would require Mr. Vidal to pay *all* Advanced Care Staffing's attorney's fees and arbitration costs, including the arbitrator's compensation, if Advanced Care Staffing is awarded *any* purported damages.

The arbitrator may not save the arbitration requirement by ignoring its loser pays provision now. Rule 2's pre-screening system means nothing if an employer like Advanced Care Staffing can use an arbitration requirement that is inconsistent with AAA's due process protections to threaten an employee in an attempt to coerce his labor. Ignoring the loser pays term and administering this dispute would only "incentivize drafters to overreach based on the assumption they could simply waive unconscionable terms when faced with litigation." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1005 (9th Cir. 2021). Instead, consistent with Rule 2, the arbitrator should pause this proceeding or dismiss it entirely.

### C. The Arbitrator Does Not Have Any Authority to Continue Administering this Dispute Until The Court Decides the Threshold Issue of Arbitrability

Mr. Vidal also writes to emphasize and reinforce that the arbitrator does not have the authority to resolve these issues of arbitrability at this stage because the purported delegation provision—the sole contractual basis for the arbitrator's jurisdiction to decide issues of arbitrability—is unenforceable, and Mr. Vidal has raised the question of the enforceability of the purported delegation provision for a court. As detailed in Mr. Vidal's November 10, 2022 letter, the sole contractual basis for the continued administration of this dispute, the delegation provision, (1) violates federal and state law; (2) does not "clearly and unmistakably" delegate issues of arbitrability to the arbitrator, and (3) was entered into by Mr. Vidal under economic duress. *See* Respond. Ltr., Nov. 10, p. 7-8.

Importantly, Advanced Care Staffing does not even dispute that these issues are for the Court to decide. Its letter also reinforces that Mr. Vidal will be able to raise serious arguments about formation and economic duress for the Court—arguments that go toward the agreement as a whole and the delegation provision in particular. *See, e.g.*, *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1106-07 (10th Cir. 2020) ("issue[s] of formation . . . cannot be delegated to an arbitrator"). Advanced Care Staffing fails to even dispute that Mr. Vidal would have been subject to a $20,000 penalty had he refused to amended contract, a factor that gave rise to the economic duress.

### D. The Arbitration Requirement is Unenforceable

Lastly, while Mr. Vidal maintains that the Employment Rules require a stay or dismissal and that the the arbitrator does not have the authority to continue arbitrating this matter at this time, should the arbitrator substantively address the Mr. Vidal's enforceability arguments, the evidence shows the arbitration clause at issue is unconscionable and unenforceable as a matter of state and federal law. For the reasons discussed in Mr. Vidal's November 10, 2022, letter, the arbitration requirement and its "loser pays" provision: (1) violate prohibitions against forced labor and trafficking, (2) violate federal and state wage and hour laws, and (3) are unconscionable and unenforceable as a matter of state law. *See* Resp. Ltr, Nov. 10, at p. 2-6. Indeed, Advanced Care Staffing does not dispute that the threat of tens of thousands of dollars in damages is a serious harm and the misuse of AAA Commercial Arbitration Rules is a threat of abuse of legal process. Similarly, permitting Advanced Care Staffing to recover lost profits would eviscerate the framework of federal and state wage statutes and all but guarantee a finding that the provision is substantively unconscionable.

Mr. Vidal's request for a stay or dismissal of the arbitration pending foundational rulings in the federal district court case should be granted because, in addition to the arbitrator not having the authority to decide the issues presented, even if the authority was present, pursuant to AAA Employment Arbitration Rules, the arbitration should be stayed or dismissed.

                                                                                            **TOWARDS JUSTICE**

                                                                                            **/s/ Valerie L. Collins**
                                                                                            Valerie L. Collins
                                                                                            David H.Seligman

Juno E. Turner
(720) 295-1672
valerie@towardsjustice.org
david@towadsjustice.org
juno@towardsjustice.org