# EXHIBIT 20



**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**

| | |
|---|---|
| **LETITIA JAMES** | **DIVISION OF SOCIAL JUSTICE** |
| **ATTORNEY GENERAL** | **LABOR BUREAU** |

January 4, 2023

**Via Electronic Mail** (LesserA@adr.org)
Ann Lesser
Vice President – Labor, Employment, and Elections
American Arbitration Association
120 Broadway, Floor 21
New York, NY 10271

Re:   *Unlawful Liquidated Damages Provisions in Employment Contracts and Advanced Care Staffing, LLC v. Benzor Vidal* (Case No. 01-22-0002-9008)

Dear Ms. Lesser:

We write to express our grave concerns about companies using arbitration proceedings to attempt to enforce illegal liquidated damages provisions against foreign nurses. Hospitals and staffing agencies have long engaged in a practice of recruiting nurses from other nations to work in New York, requiring them to sign employment contracts that oblige them to pay unlawful fees (up to $25,000) should they resign or be fired within their first three years of employment. These fees are an unenforceable penalty and the provisions threatening enforcement of such fees compel forced labor, in violation of the Trafficking Victims Protection Act ("TVPA").[1] Through recent public lawsuits, we understand that employers are pursuing damages against workers under these unlawful liquidated damages provisions through mandatory arbitration proceedings before the American Arbitration Association ("AAA").

The New York State Office of the Attorney General (the "OAG") is deeply committed to enforcing federal, state, and local laws to protect vulnerable workers' rights and ensure a workplace free of exploitation. The OAG has and will continue to investigate these types of claims. *See In re: Albany Med Health System f/k/a Albany Medical Center*, AOD No. 21-040 (June 11, 2021); AOD No. 22-058 (September 13, 2022) (settling OAG investigations of employer for unlawfully including and enforcing a $20,000 repayment fee in employment contracts from nurses recruited from foreign nations).[2]

---

[1] *See Paguirigan v. Prompt Nursing Emp't Agency LLC*, No. 17-cv-1302 (NG) (JO), 2019 U.S. Dist. LEXIS 165587, at *23, 54 (E.D.N.Y. Sep. 23, 2019).

[2] See press releases here: https://ag.ny.gov/press-release/2021/attorney-general-james-recovers-over-90000-restitution-albany-nurses-subjected (AOD No. 21-040 *embedded*); https://ag.ny.gov/press-release/2022/attorney-general-james-returns-24000-nurses-taken-advantage-albany-hospital (AOD No. 22-058 *embedded*).

28 LIBERTY ST., NEW YORK, NY 10005 ● PHONE (212) 416-8700 ● WWW.AG.NY.GOV

January 4, 2023
Page 2

    We have analyzed the contract provisions at issue in the matter of *Vidal v. Advanced Care Staffing, LLC*, 22-cv-5535 (E.D.N.Y. Sept. 16, 2022) (related to pending AAA Case No. 01-22-0002-9008, *Advanced Care Staffing, LLC v. Benzor Vidal*) where Advanced Care Staffing ("ACS") demanded a substantial penalty fee from Vidal, a nurse recruited from a foreign nation, because he failed to complete his three-year employment term. After an initial analysis of ACS contract provisions,[3] they appear invalid and unlawful under the TVPA.

    The ACS employment contracts and circumstances under which nurses have signed them, are strikingly similar to the federal matter analyzed against Prompt Nursing Emp't Agency LLC d/b/a Sentosa Services a/k/a/ Sentosacare ("Sentosa"). *Paguirigan*, No. 17-cv-1302 (NG) (JO), 2019 U.S. Dist. LEXIS 165587. In *Sentosa*, nurses recruited from the Philippines were given contracts with a provision requiring them to pay up to $25,000 in liquidated damages if they failed to complete the full three-year employment term. *Id.* at *9.[4] The $25,000 penalty demanded in liquidated damages was disproportionate to the actual costs *Sentosa* incurred in recruiting the nurses,[5] which were ascertainable at the time of hire. *Id.* at *34. This provision constituted a threat of serious financial harm "to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* at *53 (quoting TVPA § 1589(c)(2)). In reaching this conclusion the court noted consideration of the "particular vulnerabilities of plaintiff and other class members—all of them recent immigrants to the United States—and have also focused on whether it would be objectively reasonable for them to continue working under the circumstances." *Id.* at *54.

    Similar to *Sentosa*, ACS's early termination provisions threaten both legal and financial harm in violation of the TVPA § 1589. The indefinite sums demanded by ACS are disproportionate to the ascertainable costs ACS may have incurred in recruiting Vidal, making it an unenforceable penalty.[6]

---

[3] The first contract Vidal signed in 2019 sought to compel performance of a three-year work term by including a $20,000 promissory note, demanding this amount plus all costs incurred by ACS to enforce this note if Vidal was terminated or resigned within the first three years of work. The second contract Vidal signed in 2022 removed the promissory note requirement, to avoid any interpretation it could be used as an early "buy out," but still demanded reimbursement of all costs and expenses to compel work performance for three years and prevent an early termination. The costs and expenses, as vaguely stated in the second contract, are indefinite, and the financial harm threatened by ACS has the potential to exceed $20,000. In response to Vidal informing ACS of his desire to resign prior to his three-year work term, ACS communicated to him that they would seek significant damages in arbitration, explaining that their purported damages were at least $20,000, the cost of trying to find a new nurse would be $9,000 for each year remaining in his contract, and that Vidal would also be responsible for all attorney's fees and costs incurred in arbitration.

[4] The court noted that although the contract was negotiated at arms length, the parties were of "unequal bargaining power" and the contract was "not achieved through arms length negotiation"; the plaintiff was not represented by counsel when she executed the contract and there was no evidence she had familiarity with American contract law. *Id.* at *25. (internal citations omitted).

[5] When reviewing actual costs, the court looked at lawyer's fees, filing fees, visa fees, ICHP visa screening fees, airfare, and other miscellaneous expenses such as housing. *Id.* at *26.

[6] See *Paguirigan*, at *26 (the liquidated damages provision was an unenforceable penalty where it did not bear "a reasonable proportion to the probable loss").

January 4, 2023
Page 3

Accordingly, we request that AAA exercise caution in reviewing the pending arbitration matter, *ACS v. Vidal* (AAA Case No. 01-22-0002-9008). AAA should consider staying the arbitration because it is an undue burden on the worker to defend this matter, especially while the legality of the contract provision at issue is pending review before the U.S. District Court. We also request that AAA perform a review of open matters enforcing similar liquidated damages provisions and consider staying those cases as well.

The OAG also urges the AAA to exercise its authority to decline to administer future proceedings brought under like circumstances, concerning unlawful contract provisions that violate the TVPA and seek unenforceable penalties. *See AAA Employment Arbitration Rules and Procedures*, pp. 7-8 ("If the [AAA] determines that a dispute resolution program on its face substantially and materially deviates from the minimum due process standards of the Employment Arbitration Rules and Mediation Procedures and the Due Process Protocol, the [AAA] may decline to administer cases under that program").[7]

We request that the AAA consider the serious implications of proceeding with these arbitrations and not allow its arbitration program to be used as a tool by employers to further labor trafficking violations.

Sincerely,

/s/ Roya Aghanori
Roya Aghanori
Assistant Attorney General
Labor Bureau
(212) 416-6132
Roya.Aghanori@ag.ny.gov

Karen Cacace
Labor Bureau Chief

Fiona J. Kaye
Civil Enforcement Section Chief

Sandra Pullman
Senior Counsel, Civil Rights Bureau

Cc: Michele Gomez (GomezM@aaamediation.org)
Manager of ADR Services, AAA

Sara Kula (Sara@sarakula.com)
Arbitrator, AAA

---

[7] https://www.adr.org/sites/default/files/Employment-Rules-Web.pdf