# EXHIBIT 25

**FORDHARRISON**

CityPlace II, 185 Asylum Street  |  Suite 820
Hartford, Connecticut  06103
Tel 860-740-1355  |  Fax 860-578-2075

Writer's Direct Dial:

SAMI ASAAD
860-740-1357
sasaad@fordharrison.com

January 4, 2023

**Via Email Only**

Ann Lesser, Esq.
Vice President – Labor, Employment, and Elections
American Arbitration Association
120 Broadway, Floor 21
New York, NY 10271

**Re: Advanced Care Staffing, LLC v. Benzor Vidal (Case No. 01-22-0002-9008)**

Dear Ms. Lesser:

      We represent the Claimant, Advanced Care Staffing, LLC, in the referenced case. We previously refrained from responding to Respondent's legal team's letters/emails to you urging the AAA (without legal basis) to refuse to adjudicate Claimant's single-count breach of contract claim. We now feel compelled to write to you because we were made aware of a letter (the "LB Letter") that was sent to you today by the NY Attorney General's Division of Social Justice, Labor Bureau (the "LB"), which we can only surmise was done at the urging of Respondent's legal team who has been trying to stall the arbitration since its inception. We specifically write because the LB letter puzzlingly expresses "grave concerns about companies using arbitration proceedings to attempt to enforce illegal liquidated damages provisions against foreign nurses." Although we commend and share the LB's desire to "protect vulnerable workers' rights and ensure a workplace free of exploitation," the issue that the LB is gravely concerned about is simply not present in this case as this case **does not seek to enforce a "liquidated damages" provision of any kind.** Thus, the concerns raised in the LB Letter are not at issue in this proceeding.

      Before going further, it is important to mention two things: First, the LB Letter does not legally require any action by the AAA or even a response, nor does it purport to do so. Second, Claimant has not received **any** correspondence from LB regarding its "grave concerns" (or any other subject). Indeed, Claimant was not even copied on the LB Letter. Instead, Claimant became aware of the LB Letter because it was forwarded to them by a news reporter who happens to be the same reporter that Respondent's legal team has been using to spread a false narrative about Claimant. As such, we can only surmise that Respondent's team was involved in prompting the LB to send the letter. Such tactics should be disregarded and the proceeding should go forward consistent with the AAA's rules.

Ann Lesser, Esq.
January 4, 2023

## Brief Background

By way of brief background, in this arbitration, Claimant has brought a single-count breach of contract claim against Respondent. As even a cursory review of Claimant's Demand for Arbitration and/or the parties' agreement demonstrates, **there is absolutely no claim for "liquidated damages"**. Instead, Claimant seeks its actual damages, which would be determined by the Arbitrator if she were to find Respondent liable for breach of contract.

Respondent, who has been represented by a national team of lawyers both in this arbitration[1] and in a federal action filed by Respondent against Claimant, is not a "foreign nurse" but a lawful permanent resident of the United States. Respondent is a NY-licensed Registered Nurse who was earning over $70,000 when he worked for Claimant and by his own admission, now earns significantly more. In response to Claimant's breach of contract claim, Respondent has attempted to (a) avoid his contractual obligation to arbitrate by raising a multitude of legal arguments, and (b) stay this arbitration pending resolution of the federal case, despite failing to actually make any motion for relief in that case. The Arbitrator in this case has elicited and received comprehensive briefing by both parties and has denied Respondent's requested stay. Notably, the Arbitrator found that "[n]either Respondent's initial or supplemental submission provided sufficient factual or legal support for the argument that the arbitration agreement is unconscionable under New York law. Respondent's other arguments can be addressed during the proceedings in this matter." *See* Arbitrator's Order dated December 9, 2022.

## The LB Letter's Concerns Are Either Simply Inapplicable or Otherwise Unfounded

The LB Letter purports to express three concerns, all of which are either completely unfounded or simply inapplicable to the facts of this case.

First, as already demonstrated, the LB Letter's concern about liquidated damages is simply inapplicable as they are not present in this case.[2] Although the LB Letter acknowledges (in a footnote) that Claimant is not trying to enforce a "liquidated damages" provision, the LB Letter confusingly persists in characterizing Claimant as if it is pursuing such a claim.

The LB Letter's second concern is the equally-unfounded assumption that Claimant is somehow involved in an illegal human trafficking operation. In particular, the LB Letter purports to equate Claimant with the defendant in a case called *Paguirigan v. Prompt Nursing Emp't*

---

[1] Respondent's counsel appears to be taking the position that they only represent Respondent in connection with his request for a stay and not for the merits, though it is unclear if such a position is supportable by opposing counsel's ethical obligations in light of the simple fact that they are appearing on his behalf in an action involving the same two parties. Indeed, it appears that they are prepared to engage in all manner of tactics, including apparently involving the LB to pressure the AAA to stay the action rather than actually representing the Respondent in a proceeding on the merits of the claims at issue in the arbitration.

[2] Although the parties had an older contract that contained a liquidated damages provision, the LB Letter notes that the operable agreement eliminated that provision, replacing it with a provision requiring damages to be determined by a neutral arbitrator.

Ann Lesser, Esq.
January 4, 2023

*Agency LLC d/b/a Sentosa*, 2019 U.S. Dist. LEXIS 165587 ("*Paguirigan*"). The defendant in that case was found to have violated the Trafficking Victims Protection Act after engaging in a series of flagrantly bad acts including violating prior judicial rulings and **criminally prosecuting** individuals! The following table demonstrates the stark contrast between the Claimant here and the defendant in *Paguirigan*:

| **The Defendant in the *Paguirigan* Case** | **Claimant** |
|---|---|
| o  the defendant's $25,000 liquidated damages provision was **determined to be an illegal penalty** | o  **No liquidated damages provision** (Claimant only seeks actual damages as determined by a neutral arbitrator) |
| o  the defendant improperly used a contract provision that a **judge had already held to be invalid** | o  There has **never** been any such ruling |
| o  the defendant forced parties to sign **"confessions of judgment"** which were unenforceable and improper | o  There is **no** confession of judgment |
| o  the defendant improperly filed lawsuits asserting **$250,000** in damages | o  There was **no such action** by Claimant |
| o  the defendant improperly attempted to have individuals **criminally prosecuted** | o  There was **no such action** by Claimant |

    As will easily be demonstrated at the arbitration in this matter, there is absolutely no basis for the LB Letter's comparison.

    The third—and perhaps most unfounded "concern"—is that the AAA might be "used as a tool by employers to further labor trafficking violations." As you are undoubtedly aware, the LB Letter's concern is vastly at odds with the overwhelming and long-standing judicial approval, all the way up to the U.S. Supreme Court, of arbitration in general and of the AAA in particular. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991) (approving of mandatory arbitration of statutory employment claims); *Hermes of Paris, Inc. v. Swain*, 2021 WL 5170726, at *2 (2d Cir. Nov. 8, 2021) (affirming judgment confirming an arbitration award obtained under the AAA's Employment Arbitration Rules); *Jenkins v. CitiFinancial, Inc.*, 2007 WL 9753133, at *7 (D.S.C. Jan. 16, 2007) (referring to the AAA as "a respected neutral arbitration association"). Accordingly, there is no basis for the LB Letter's concern that the AAA is liable to be "used as a tool" in this or any other employment-related cases to advance unlawful objectives. To the contrary, it is a respected forum for the efficient resolution of lawful claims. The LB should not dissuade the AAA from continuing to lawfully serve in that capacity, particularly in a case when their purported concerns about liquidated damages are not even at issue.

Ann Lesser, Esq.
January 4, 2023

### Conclusion

      In conclusion, there is no basis for the alleged concerns stated in the LB Letter and no basis for the AAA to take any action in response to the LB Letter. Moreover, although we expect Respondent's counsel to try to use the LB Letter to (yet again) relitigate his request for a stay, we will continue to proceed in accordance with the Arbitrator's Orders.

      Respectfully submitted,

      Sami Asaad

Cc:    Michele Gomez (AAA)

      David Seligman, Esq. (Respondent's Counsel)
      Valerie Collins, Esq. (Respondent's Counsel)
      Juno Turner, Esq. (Respondent's Counsel)