

## AMENDED AND RESTATED EMPLOYMENT AGREEMENT

This Amended and Restated Employment Agreement ("Agreement"), dated as of November \_\_\_ 2021, is by and between ADVANCED CARE STAFFING, LLC, located at 1000 Gates Avenue, Suite 5B, Brooklyn, New York 11221, ("Employer") and _____ _____, a natural person residing at _____, _____, _____ _____ (the "Employee").

### BACKGROUND

A. Employer is a healthcare staffing agency that recruits and employs nurses whom Employer deploys to contracted long-term care facilities such as nursing homes and skilled nursing facilities (each, a "Client") in the United States.

B. Based upon the education, training and personal information provided to Employer by Employee, Employer desires to hire Employee to work as a Registered Nurse at one or more of its Clients in the United States.

C. Employee is not currently under contract with any person or company that is sponsoring Employee to work in the United States other than Employer.

D. Employee desires to be employed by Employer as a Registered Nurse in the United States and to work in a long-term care setting in accordance with the terms and conditions of this Agreement.

E. Employee and Employer entered into an Employment Agreement on _____ \_\_\_\_, 20\_\_\_ ("Prior Agreement").

F. Employer and Employee wish to fully replace the Prior Agreement with this Agreement.

### TERMS

Employer and Employee hereby agree as follows:

**Section 1.** Employee's Representations and Obligation to Cooperate and to Provide Documents and Information.

(a) Employee represents that Employee is not currently under contract with any other person or company that is sponsoring Employee to work in the United States. Employee also represents that Employee has not been petitioned by any other agency or facility for employment in the United States. Employee agrees that during the Term, Employee shall not contract with any other person or company to file a petition/application with USCIS for Employee's benefit.

(b) Employee represents and warrants that Employee has not previously been convicted of a criminal offense other than minor traffic violations and that there are no impediments to Employee entering into this Agreement. Employee also represents that Employee is in good physical and mental health (in accordance with the standards and requirements as regulated by US immigration authorities and the Board of Nursing of the state(s)) and neither the execution of this agreement nor the consummation or performance of any of the parties' obligations hereunder will conflict with or result in the breach of any previous



agreement entered into by the Employee. Employee further represents and warrants that Employee knows of no impediment to Employee receiving an immigrant visa.

(c)     Upon the execution of this Agreement, and during the term of this Agreement, Employee shall deliver to Employer all documents that Employer, in its sole discretion, deems necessary (i) to validate personal, educational, professional and any other information pertaining to Employee; and (ii) to obtain immigration approvals necessary for Employee to depart Employee's foreign country and work in the United States.  Further, during the Term (as defined below), Employee agrees to provide all documents and information and to appear for any and all interviews as deemed necessary by Employer, in its sole discretion.

(d)     Employee promises to promptly schedule and appear for any and all interviews, medical exams or the like that may be necessary to secure approval to depart Employee's foreign country and to enter into and work in the United States.

(e)     Employee agrees to submit to post-offer and pre-employment medical examinations (including a negative PPD and/or chest X-Ray), vaccinations, drug screening, fingerprinting, and other requirements prior to providing any service, in accordance with United States federal, state, and local requirements.

Section 2.     Authorization and Licensing Requirements.

(a)     Employee acknowledges and agrees that employment with Employer is contingent on Employee becoming authorized to work in the United States and maintaining authorization to work as a Registered Nurse in the United States jurisdiction(s) selected by Employer, in its sole discretion.

(b)     Employee shall use Employee's best efforts to promptly register for and take all examinations required to obtain the necessary authorizations and licenses.  Required examinations include, but are not limited to the National Council Licensure Examination ("NCLEX"), which Employee shall take within three months of the date of this Agreement. If Employee fails to pass any required examination, Employee shall take additional steps and shall commit additional time and energy to studying and passing the examination at the next available examination session. Employer's obligations under this Agreement are contingent upon Employee passing the NCLEX within six months of the date of this Agreement.

(c)     Employee shall use Employee's best efforts to promptly obtain a Visa Screen certificate from the Commission on Graduates of Foreign Nursing Schools or a USCIS-approved equivalent independent credentialing organization.

(d)     Employee shall use Employee's best efforts to apply for licensure as a Registered Nurse in the United States jurisdiction(s) selected by Employer, in its sole discretion.

Section 3.     Petition for Employment Based Immigrant Visa.

(a)     Upon receipt of proof that Employee (i) is duly licensed and qualified as a Registered Nurse in the U.S. State selected by Employer, (ii) has passed the IELTS, and (iii) has obtained a Visa Screen, Employer will prepare and submit a petition for an Employment-Based Immigrant Visa ("EB Visa") on behalf of Employee to the United States Citizenship and Immigration Service ("USCIS").  Employer will pay all fees associated with the filing of such petitions, including attorneys' fees. Employee agrees that Employer may



arrange for the handling of the EB Visa petition by an immigration attorney of its choice and that all decisions regarding the handling and filing of the EB Visa petition, including preference category, shall be in Employer's sole discretion.

(b)     In the event that the EB Visa petition is not approved by the government for any reason, Employer shall have the right (but not the obligation), in its sole discretion, to refile, appeal the denial, and/or seek further government review of the petition.  If Employer chooses to refile, appeal, or seek further review, Employee will continue to cooperate with Employer's efforts, but the appeal or request for further review shall be at Employer's sole expense.

(c)     Employee understands and acknowledges that Employer cannot guarantee any government approval regarding Employee, including but not limited to, the type of work authorization issued by USCIS (if any).  Employee further understands that Employer cannot guarantee a specific date by which Employee will be sent to the United States or a specific date by which all requirements for employment will have been satisfied.  Employee understands that any application or petition submitted by or on behalf of Employee with the United States or the foreign governments is subject to the sole approval of such government(s), and that any such approval is outside of Employer's control.

**Section 4.**     Advanced Costs.

(a)     Employer agrees to advance (or reimburse) the following costs on behalf of Employee ("Advanced Costs"):

1. The costs of the review courses specified by Employer.
2. The costs of initial professional licensing fees (costs of renewals may be advanced by Employer in its sole discretion);
3. The costs of credentialing specified by Employer;
4. The costs of visa screens, as applicable;
5. Costs of the NCLEX exam for one attempt; Employer may, in its sole discretion, pay for additional attempts, the costs of which would be included as the Advanced Costs; and
6. IELTS Certification for one attempt (English Language Proficiency Test).

Employer reserves the right, in its sole discretion, to pay for or reimburse additional exams, repeat exams and related expenses as needed by Employee, all of which shall be regarded as Advanced Costs.

(b)     Upon Employee's receipt of USCIS approval to travel to and commence employment in the United States, and satisfaction of all other pre-employment obligations under this Agreement, Employer shall advance (or reimburse) the following additional costs, all of which shall also be regarded as Advanced Costs:

1. One one-way airplane ticket (economy airfare) to the U.S. state where Employee will be deployed;
2. Housing allowance of a minimum of $1,000 per month for two months;
3. $400 gift cards for groceries; and
4. One monthly pass for local public transportation (if any) in the city where Employee is deployed.



(c) Employee acknowledges that Employer is incurring Advanced Costs upon the express condition that Employee will complete the Term in full. Therefore, Employee shall immediately repay all Advanced Costs in the event that Employee fails to complete the Term for any reason.

**Section 5.** <u>Work Schedule and Responsibilities Upon Commencement of Work</u>

(a) Upon lawful arrival in the United States, Employee agrees to work as a Registered Nurse (including all duties that are customary in providing nursing services) on a full-time basis. Typically, Employer's clients follow one of three daily shifts, 7:00 a.m. to 3:00 p.m., 3:00 p.m. to 11:00 p.m., and 11:00 p.m. to 7:00 a.m. (with an unpaid meal break during each shift); however, the hours of work and the shift schedule shall be determined by the Employer.

(b) Employee shall be available to work a full-time work schedule and any overtime required by Employer, subject to applicable law. Employee shall not commit to any business activity outside of Employee's employment with Employer without Employer's prior written approval.

(c) Employee's assigned work location shall be determined by Employer in its sole discretion. The assignment to any Client may be changed at any time. After completing a minimum of six months at Employee's assigned location, Employee may request a different assignment, but Employee understands and agrees that Employer will ultimately determine, in its sole discretion, Employee's assignment.

(d) Upon becoming eligible to commence employment in the United States, Employee agrees to abide by all of the rules set forth in **Schedule A**.

**Section 6.** <u>Confidentiality and Nonsolicitation.</u>

(a) Employee acknowledges that during the course of employment with Employer, Employee will be privy to confidential information of Employer, including but not limited to Client lists and information, placement information, business plan information, marketing information, industry analysis, and business development information ("Proprietary Information"). Employee also acknowledges that Employer has spent substantial amounts of money, time and effort in developing and maintaining relationships with its Clients and employees. Employee agrees that the following restrictions on Employee's employment and work activities are necessary to protect Employer's legitimate business interests in the education and training provided to Employee, its relationships with Clients and employees, and its Proprietary Information:

(i) Employee agrees never to disclose any of Employer's Proprietary Information to anyone outside of Employer except as required in the course of Employees duties for Employer. Employee further agrees not to use, or cause or allow another person or entity to use, Proprietary Information in any way other than in Employer's business (as authorized by Employer).

(ii) Throughout the duration of the Term (regardless of whether Employee's employment terminates sooner for any reason), Employee shall not work, directly or through another employer, for any Client with whom Employer placed Employee to work at any time.



(iii)   Throughout the duration of the Term (regardless of whether Employee's employment terminates sooner for any reason) and for a period of two years thereafter, Employee will not directly or indirectly, solicit, induce, or encourage any of Employer's employees to separate from Employer.

(iv)   Throughout the duration of the Term (regardless of whether Employee's employment terminates sooner for any reason) and for a period of two years thereafter, Employee will not directly or indirectly, solicit, induce, or encourage any Clients to stop doing business with Employer.

(b)   Employee acknowledges that the above restrictions on Employee's activities do not prevent Employee from pursuing a career in nursing or from using skills learned while employed by Employer in any business or activity outside the scope of this Section 6.  Employee further acknowledges and agrees that the restrictions in this Section 6 are narrow, reasonable, legitimate and fair, and are warranted to protect only the legitimate business interests of Employer in protecting its Client and employee relationships, ensuring that Employee loyally discharges Employee's duties, and preventing the unauthorized disclosure of its Proprietary Information.

(c)   Employee acknowledges and agrees that if he or she breaches any of the above covenants, the damage to Employer would be irreparable and that money damages would not adequately compensate Employer for its damages.  Accordingly, notwithstanding anything in this Agreement to the contrary, Employee agrees that in the event of a breach of the covenants in this Section 6, Employer will be entitled to an immediate order from a court of competent jurisdiction commanding Employee to cease violating the covenant(s) and enjoining Employee from further violation.  Employer shall not be required to post a bond.  Employer shall be entitled to recover all reasonable attorneys' fees and costs incurred in seeking such an injunction.  This injunctive remedy shall not be exclusive of any other remedy to which Employer might be entitled.

(d)   The parties agree that if any of the covenants in this Section 6 is found to be unenforceable as drafted, the court interpreting such covenant is expressly authorized to make such modifications as are necessary to make it enforceable according to applicable law and to enforce it as modified.

**Section 7.**   Compensation.

(a)   Employee will be paid in accordance with applicable federal and state law (including applicable minimum wage and overtime requirements).

(b)   Employee's wage rate for the services specified in the USCIS petition pursuant to which Employee provides services under this Agreement shall be the prevailing wage rate specified in that petition.

(c)   Employee shall be required to complete and submit time records in accordance with the requirements of Employer and the Client. Payment of compensation, including frequency of payments and withholding of taxes and other legally authorized withholdings, will be subject to applicable law and Employer's policies.

**Section 8.**   Paid Time Off and Other Benefits.

Employee shall participate in all benefits applicable to all of Employer's similarly situated employees, including group health insurance, holidays, and paid time off (which includes both sick time and vacation time).  Employee understands that benefits provided to all similarly-situated employees may be changed



from time to time in Employer's sole discretion.  Employee shall also be covered by workers' compensation insurance and all applicable, legally-mandated leave entitlements, such as any applicable family and medical leave, subject to applicable eligibility requirements.

**Section 9.**     Term.

(a)     The term of this Agreement (the "**Term**") shall continue until Employee has completed three years of work as a Registered Nurse for Employer in the United States. The three-year employment period shall be deemed to have been completed upon Employee's completion of 5460 hours worked for Employer in the United States.

(b)     Time off spent by Employee while using authorized accrued paid time off ("PTO") shall be counted towards completion of the Term (e.g., Employee taking one week of PTO will have one week counted toward completion of the Term).

(c)     If Employee fails to report to work for any amount of time during the Term, other than while using authorized, accrued PTO, then, at Employer's option, the Term may be extended by the amount of time missed.

**Section 10.**     Termination.

(a)     Each party reserves the right to terminate this Agreement prior to the end of the Term, subject to the following conditions:

(1)     Employee acknowledges that if Employee fails to fulfill Employee's obligations under this Agreement, Employer will suffer significant harm arising from the significant investment related to the recruitment, training, credentialing, and placement in the United States (including fees paid to third-parties) and the reasonable expectation that Employee will maintain full-time employment with Employer for the maximum amount of time under this Agreement.  Such harm includes, but is not limited to, the expenses and costs mentioned in Sections 3 and 4 (subject to applicable law). In addition, Employee recognizes that Employer will suffer significant loss of profits (reflecting not only loss of anticipated profits under this Agreement but also resulting from the impact on Employer's relationship with its Clients) in the event Employee fails to fulfill Employee's obligations under this Agreement. Therefore, the parties agree that if Employee terminates this Agreement without Good Reason (as defined below), or if Employer terminates this Agreement for Cause (as defined below), Employer shall be entitled to all damages and other relief to redress the harm caused by the failure of Employee to fulfill Employee's obligations under this Agreement.

(2)     For purposes of this Agreement, "Good Reason" for termination by Employee is defined as a failure by Employer to correct a material breach of Sections 3 or 7 of this Agreement within 35 days following Employer's receipt of written notice by Employee of such material breach.  Written notice must physically be received at Employer's office at 1000 Gates Avenue, 5th Floor, Suite 5B, Brooklyn, New York 11221.

(3)     For purposes of this Agreement, "Cause" includes, without limitation, Employee's loss of Employee's authorization to work as a Registered Nurse in the jurisdiction(s) assigned by Employer, Employee's failure or refusal to perform any of Employee's material obligations under this Agreement, Employee's refusal to adhere to the policies or procedures of the Client(s) to which Employee is assigned, Employee's engaging in conduct detrimental to the reputation of Employer or its Client(s), Employee's



commission of an unlawful act, Employee's unauthorized removal of property of Employer or a Client, Employee's falsification of documents, reports or records, absenteeism or chronic lateness, Employee's failure or refusal to provide patient care consistent with accepted guidelines or to perform the duties of employment.  Employer may immediately terminate this Agreement for Cause at any time.

(b)     This Agreement will terminate in the event of Employee's Disability (as defined below) or death.  For purposes of this Agreement, "Disability" means incapacitation due to illness, accident or other physical or mental disability which renders Employee substantially unable to work for a period of one hundred twenty (120) days, and no reasonable accommodation being available which would permit Employee to perform the essential functions of Employee's position.  In the event Employee and Employer disagree as to the existence of a Disability, the dispute shall be resolved by an independent medical doctor selected by Employer.

(c)     In the event of termination of this Agreement, any outstanding payment obligations shall remain in effect until satisfied in full, and the following provisions shall remain in effect in accordance with their respective terms:  Section 4; Section 13 (including Schedule B), Section 14, and this Section 10.

**Section 11.**     Headings.

The headings of the Sections of this Agreement (including Schedules) are for convenience only and shall not control or affect the meaning or construction or limit the scope or intent of any of the provisions of this Agreement.

**Section 12.**     Entire Agreement; Modification; Waiver.

This Agreement contains the entire agreement between the parties concerning the subject matter hereof and supersedes the Prior Agreement. All obligations under this Agreement which were performed by the parties prior to the date of this Agreement (for example, actions performed under the Prior Agreement) shall be deemed to have been performed under this Agreement. This Agreement may not be modified or amended except in a writing signed by both parties.  If any term in this Agreement is held by a tribunal having jurisdiction to be overbroad and/or unenforceable, the parties acknowledge and agree that the defective terms shall be modified to the extent necessary to comply with applicable law.  If it is determined that any of the provisions of this Agreement are invalid or unenforceable, the remaining provisions shall survive and be given full force and effect.  Failure to enforce a provision of this Agreement shall not be construed as a waiver of future enforcement of that provision or any other provision in the Agreement.

**Section 13.**     Governing Law; Dispute Resolution.

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.  The parties agree to the dispute resolution provision contained in **Schedule B**.

**Section 14.**     Reimbursement of Employer's Costs of Enforcement.

Employee shall reimburse Employer for all reasonable costs, including all attorneys' fees that Employer incurs in enforcing its rights and remedies under this Agreement.

**By signing this Agreement, Employee confirms that Employee (i) has read and understood all the terms of this Agreement, and (ii) had an opportunity to consult with an attorney of his or her choosing before signing it. By signing this Agreement, Employee also confirms that Employee is committed to**



working for Employer for at least three years as a Registered Nurse caring for elderly patients in a long-term care setting.

**Advanced Care Staffing, LLC**

BY: _____                    _____
                                                                                            Employee Name (Print)

_____                         _____
Signature                                                                            Signature

_____                         _____
Date                                                                                    Date



## SCHEDULE A
## TO THE AMENDED AND RESTATED EMPLOYMENT AGREEMENT
## RESPONSIBILITIES OF EMPLOYEE UPON COMMENCEMENT OF EMPLOYMENT

1. Employee shall devote his/her entire professional time, skill and attention to the performance of the nursing services and other activities on behalf of Employer, including but not limited to obtaining any certifications required for Employer.  Employee shall make every effort to, and shall conduct him/herself at all times so as to advance the best interests of Employer and the assigned Client(s).

2. Employee shall not, without the written consent of Employer, practice or render any service of a professional nature, except as assigned by Employer.

3. Employee will report to work at the date, time and location assigned by Employer.

4. Employee shall notify both Employer and the Client immediately upon discovering that Employee will not be able to work at a time or date that Employer has scheduled Employee to work.

5. Employee shall notify Employer, by telephone, if a Client requests Employee to work more than 40 hours in any work week.  This notification requirement does not relieve Employee of Employee's duty to report to work as scheduled.

6. If any Client instructs or directs Employee to take action that Employee believes to be improper, or if any Client instructs or directs Employee to refrain from taking action that Employee thinks is necessary, or if Employee has been subject to any conduct by any Client that he/she believes to be improper or unlawful, Employee will immediately notify Employer.

7. Employee shall abide by Employer's policies and procedures applicable to similarly situated employees, which may be changed from time to time in Employer's sole discretion.

8. Employee shall at all times during the Term keep Employee's license to work as a Registered Nurse in good standing, and shall remain immigration compliant.  This includes, but is not limited to, compliance with health exams, Visa screen, and any continued education as required by state licensing boards. Employee shall immediately notify Employer in writing of any investigation or inquiry involving Employee by any state or federal regulatory agency, governmental authority, or licensing authority.

9. Employee shall at all times comply with the ethics and professional standards pertaining to Registered Nurses as well as all applicable federal, state and local law.

10. Employee shall in a timely fashion prepare, maintain, and submit necessary or appropriate reports, claims, correspondence and records relating to his/her duties performed under this Agreement as may be required by Employer, all of which shall be the sole property of Employer.



11. Employee will immediately notify Employer in writing of (i) any incident or claim of wrongdoing or neglect involving Employee's provision of services under this Agreement and (ii) any investigation or inquiry involving Employee by any state or federal regulatory agency, governmental authority, or licensing authority.

12. Employee shall be held responsible for any legal action taken against Employer due to Employee's misrepresentation of him/herself or his/her qualifications.

13. Employee understands and agrees that he/she is obligated to work the schedules and shifts assigned to him/her and that Employee may be required to work varying shifts and varying hours at Employer's sole discretion.

14. Employee shall be responsible for providing Employee's own method of reliable and timely transportation to and from any Client, including when necessary travelling between different Clients in a single day.

15. Employee must provide a reliable method for Employer to get into contact with Employee during and after work, including a mobile telephone and e-mail address.

16. Employee shall promptly provide all documents as requested by Employer during Employee's employment.

17. Employee shall comply with any additional lawful rules and requirements established by Employer.


Signatures:   _____
              Employee


              _____
              Employer