# FORDHARRISON

CityPlace II, 185 Asylum Street | Suite 820
Hartford, Connecticut 06103
Tel 860-740-1355 | Fax 860-740-1394

SAMI ASAAD
860-740-1357
sasaad@fordharrison.com

February 10, 2023

**VIA ECF**

Hon. Nina R. Morrison, USDJ
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *Vidal v. Advanced Care Staffing, LLC*
             Civil Action No.: 1:22-cv-05535-NRM-MMH

Dear Judge Morrison:

    We write on behalf of defendant Advanced Care Staffing, LLC ("ACS"). On February 6, 2023, Plaintiff's counsel, wrote to inform the court regarding "a letter from the Office of the New York State Attorney General ("OAG") to the American Arbitration Association ("AAA") regarding the AAA's administration of arbitration proceedings against foreign nurses like Mr. Vidal," which Plaintiff's counsel claims provides further support for Mr. Vidal's pending motion for a preliminary injunction. To ensure that the court has an up-to-date record of submissions to the AAA regarding the OAG's expression of purported concerns to the AAA, enclosed please find a letter that ACS sent yesterday to the AAA on which the OAG was copied.

    Thank you for your consideration of this submission.

                                          Respectfully submitted,

                                          Sami Asaad

Enclosure

cc: All counsel of record by ECF

# EXHIBIT A

**FORDHARRISON**

CityPlace II, 185 Asylum Street | Suite 820
Hartford, Connecticut 06103
Tel 860-740-1355 | Fax 860-578-2075

Writer's Direct Dial:
SAMI ASAAD
860-740-1357
sasaad@fordharrison.com

February 9, 2023

**Via Email Only**

Tracey B Frisch, Esq.
Senior Counsel
American Arbitration Association
120 Broadway, Floor 21
New York, NY 10271

Re:   Response to Letter from New York Assistant Attorney General Roya Aghanori Regarding Alleged "Unlawful Liquidated Damages Provisions in Employment Contracts"

   *Advanced Care Staffing, LLC v. Benzor Vidal* (Case No. 01-22-0002-9008)

Dear Ms. Frisch:

   We represent the Claimant, Advanced Care Staffing, LLC ("ACS"), in the referenced case. We write to address the issues raised by New York Assistant Attorney General Roya Aghanori's letter dated February 2, 2023 (the "February 2 Letter"). The February 2 Letter reiterates AAG Aghanori's January 4, 2023 letter (the January 4 Letter") in which she expressed "grave concerns about companies using arbitration proceedings to attempt to enforce illegal liquidated damages provisions against foreign nurses." (The February 2 Letter and the January 4 Letter will be referred to collectively as the "AAG Letters.")

   Before turning to the issues in the AAG Letters, we wish to briefly address a procedural matter: the parties in the above-referenced case currently have oral argument scheduled for later this month on Mr. Vidal's preliminary injunction motion that is pending in the U.S. District Court for the Eastern District of New York. The February 2 Letter refers to two other cases that are pending before the AAA: Case No. 01-22-0005-0938 (involving respondent Cherry Lyn Miclat, who is copied on this letter) and 01-22-0005-1525 (involving respondent Nicolle De Jesus, who is also copied). There are no federal court proceedings involving those cases, and each case requires resolution on its own merits. However, we will consent to a 30-day extension of the current deadlines in the two other cases to allow time to consider what impact, if any, the developments in the Vidal case might have on those other cases.

   As for the concerns in the AAG Letters, to address them in the most direct and succinct manner possible, the remainder of this letter is structured in the form of questions and answers. Should you have any questions that you feel were not addressed, please let us know.

www.fordharrison.com

Tracey B. Frisch, Esq.
February 9, 2023

1.  **Does the parties' agreement contain a liquidated damages provision?**

    **No.** Nowhere in Mr. Vidal's Amended and Restated Employment Agreement (the "Vidal Agreement") is there a liquidated damages provision. (*See* Vidal Agreement, a copy of which is attached for your convenience.) Although the contract initially signed by the parties included a liquidated damages provision, the Vidal Agreement amended and restated the parties' contract to (among other things) **eliminate liquidated damages**. To be clear, ACS has not sought, and is not seeking, to enforce that earlier contract which has been amended, replaced and superseded in its entirety by the current form of agreement and any suggestion to the contrary is patently false.

2.  **What is ACS seeking to recover in this arbitration?**

    **ACS seeks to recover its actual damages (to be determined by the Arbitrator) for Mr. Vidal's breach of the Vidal Agreement.** The following is a brief summary of ACS's claim and basis for such damages:

    In the Vidal Agreement, ACS, a healthcare staffing company, promised to

    (a) sponsor Mr. Vidal for an employment-based Immigrant Visa, which allows individuals from other countries to obtain Lawful Permanent Residency ("green card") status in the United States, including the payment of all costs and legal fees associated with sponsoring his visa;

    (b) pay for Mr. Vidal's air travel to the United States and subsidize his accommodations for two months;

    (c) cover several costs including, but not limited to, professional licensing fees, education costs, and credentialing costs; and

    (d) employ Mr. Vidal as a Registered Nurse at one of its clients' licensed healthcare facilities at the prevailing wage rate determined by the U.S. Department of Labor ("USDOL"), which in this case was over $68,000.00 annually.

    In exchange for the benefits provided by ACS, Mr. Vidal promised to complete a term of employment of three years as a Registered Nurse.

    The Vidal Agreement provides that "if Employee terminates this Agreement without Good Reason … Employer shall be entitled to all damages and other relief to redress the harm caused by the failure of Employee to fulfill Employee's obligations under this Agreement." (See Vidal Agreement at Section 10(a)(1).) This language gives the arbitrator the discretion to award whatever actual damages are allowed by applicable law.

    In this case, ACS provided Mr. Vidal with all of the benefits of the Vidal Agreement, including sponsoring him to become a Lawful Permanent Resident of the United States and

paying him a wage **above the prevailing wage determined by the USDOL**. This arrangement, which enabled Mr. Vidal to remain in the United States at the conclusion of his three-year commitment to ACS untethered to a sponsor employer and to secure future employment opportunities that he would otherwise not have had, conferred substantial and lasting benefits upon Mr. Vidal in return for his contractual commitment to work for ACS for an agreed term. After working for only three months, however, Mr. Vidal resigned. Prior to his resignation, he never expressed any complaints or dissatisfaction concerning his assigned work location or any other term or condition of employment. Therefore, ACS seeks an award of damages in an amount to be determined by the Arbitrator **after an evidentiary hearing and in accordance with applicable law**.

3. **Is it unlawful for an employer to seek damages from a former employee?**

   **No.** The only decision cited in the AAG Letters, *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 2019 WL 4647648 (E.D.N.Y. Sept. 24, 2019), does not prohibit employers from seeking damages. In fact, *Paguirigan* **does not even prohibit recovery of liquidated damages** from an employee, stating, "of course, **there is no prohibition against** defendants placing a valid liquidated damages provision in their contracts." *Id.* at *17 (emphasis added).

   Moreover, although we reiterate that there is no liquidated damages provision in the Vidal Agreement, federal regulations **expressly authorize employers to recover liquidated damages** from non-immigrant workers (*i.e.*, those who **lack** Mr. Vidal's Lawful Permanent Resident status and who are legally authorized to work only for a sponsoring employer). Specifically, 20 CFR § 655.731(c)(10)(i)(B) states: "The employer is permitted to receive *bona fide* liquidated damages from the … nonimmigrant who ceases employment with the employer prior to an agreed date." Here, ACS is **not** seeking liquidated damages and Mr. Vidal is in a materially better position than other non-immigrant workers authorized to work only for a sponsoring employer since as a lawful permanent resident, he is free to work for any employer anywhere. Simply put, there is nothing improper about ACS seeking to recover its actual damages for breach of contract occasioned by Vidal's departure after working for only 3 months. Were the law otherwise, an employer who confers substantial benefits upon an employee in reliance on that employee committing to work for an agreed term (and in accordance with applicable wage, hour and other laws) would have no recourse whatsoever should the employee refuse to honor that contractual commitment.

4. **If Paguirigan states that "valid liquidated damages" are allowed, why did the court find fault with the employer's liquidated damages provision in that case?**

   Among other things (see below), the judge in *Paguirigan* found that the $25,000 "liquidated damages" amount in the parties' agreement was legally invalid and constituted an unlawful "penalty" under New York law.[1] In fact, one of the problems with the employer's

---

[1] Under New York law, "where the damages flowing from a breach of a contract are easily ascertainable, or the damages fixed are plainly disproportionate to the contemplated injury, the stipulated sum will be treated as a penalty

Tracey B. Frisch, Esq.
February 9, 2023

liquidated damages provision was that in a prior New York state court case involving the same employer and same contract provision, the judge determined that the employer's provision was an unlawful penalty. The judge in *Paguirigan* found that the employer **ignored the prior court decision** and **continued to include the same provision** in its contracts with employees.

5. **Are the facts of the *Paguirigan* case similar to the facts of this case?**

   **No.** In *Paguirigan,* the court found that the employer violated the Trafficking Victims Protection Act ("TVPA") by engaging in a series of egregious actions including violating prior judicial rulings and **criminally prosecuting** individuals. The following table demonstrates the stark contrast between the facts in *Paguirigan* and the facts in this case:

| The facts in the *Paguirigan* case | The facts in this case |
|---|---|
| o the defendant's $25,000 liquidated damages provision was **determined to be an illegal penalty** | o **No liquidated damages provision** (Claimant only seeks actual damages as determined by a neutral arbitrator) |
| o the defendant improperly used a contract provision that a **judge had already** held to be invalid | o There has **never** been any such ruling with regard to Vidal's agreement |
| o the defendant forced parties to sign **"confessions of judgment"** which were unenforceable and improper | o There is **no** confession of judgment |
| o the defendant improperly filed lawsuits asserting **$250,000** in damages | o There was **no such action** by Claimant |
| o the defendant improperly attempted to have individuals **criminally prosecuted** | o There was **no such action** by Claimant |

6. **Was Mr. Vidal a victim of human trafficking?**

   **ABSOLUTELY NOT.** Mr. Vidal entered this country as an English-speaking licensed Registered Nurse and Lawful Permanent Resident of the United States (because ACS spent a significant amount of time and money sponsoring his visa). He worked at a licensed healthcare facility in New York City alongside other nurses who were not sponsored, doing the exact same work. He was always free to choose where to live and work. Indeed, he chose to resign after working only three months. According to the Complaint he filed in federal court, Mr. Vidal left his job with ACS where he was earning over $70,000.00 to take a job where he appears to be earning substantially more. There is no reasonable basis for Mr. Vidal to characterize himself as a victim of human trafficking.

---

and disallowed." *Id.* at *8 (internal quotations omitted). The judge in *Paguirigan* found that on the record in that case, the employer's damages were ascertainable and that the liquidated damages amount was disproportionate.

Tracey B. Frisch, Esq.
February 9, 2023

### 7. Is there a legal basis for individuals such as Mr. Vidal to contend that resolving a breach of contract claim via arbitration imposes an undue burden?

**No.** The AAG Letters do not cite to any legal authority in support of such a proposition, and U.S. Supreme Court jurisprudence is replete with cases upholding the Federal Arbitration Act and endorsing arbitration of employment disputes. *See e.g., Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018). Moreover, from a factual standpoint, as the parties have stipulated, and the Arbitrator has ordered, this case is proceeding under the AAA's Employment Arbitration Rules pursuant to which the Employer is paying both the AAA's fees and the Arbitrator's fees. Mr. Vidal has not incurred a single fee in connection with this arbitration.

### Conclusion

In conclusion, the AAG Letters' concerns about "unlawful liquidated damages" are simply not applicable to the facts of this case, and there is no legal or factual basis for the AAA to impose a stay or take any other special action in Mr. Vidal's case or in the others referenced in the AAG Letters. Without waiver of this position, we have agreed to a 30-day extension of the deadlines in Case No. 01-22-0005-1525 and Case No. 01-22-0005-0938.

Respectfully submitted,

*/s/ Sami Asaad*

Sami Asaad

Encl.

Cc:  Michele Gomez (AAA)
Eric P. Tuchmann, Esq. (AAA)
Ann Lesser, Esq. (AAA)
Sara Kula, Esq. (Arbitrator)

David Seligman, Esq. (Respondent's Counsel)
Valerie Collins, Esq. (Respondent's Counsel)
Juno Turner, Esq. (Respondent's Counsel)

Roya Aghanori, Esq. (Office of NY Attorney General)
Karen Cacace, Esq. (Office of NY Attorney General)
Fiona J. Kaye, Esq. (Office of NY Attorney General)
Sandra Pullman, Esq. (Office of NY Attorney General)

Nicolle De Jesus (Respondent in Case No. 01-22-0005-1525)

Cherry Lyn Miclat (Respondent in Case No. 01-22-0005-0938)